UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JACOB JAMES NANCE,

        Petitioner,

                                CASE NO. 2:06-CV-14523

    v.                            JUDGE VICTORIA A. ROBERTS
                                MAGISTRATE JUDGE PAUL J. KOMIVES

JOHN BOYNTON,

        Respondent.

_____/


## REPORT AND RECOMMENDATION

*Table of Contents*

I.    RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
II.   REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    A.   *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    B.   *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    C.   *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    D.   *Prosecutorial Misconduct (Claim I)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
        1.   *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
        2.   *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
            a. Prior Inconsistent Statements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
            b. Facts Not in Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
    E.   *Ineffective Assistance of Counsel (Claims II & III)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
        1.   *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
        2.   *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
            a. Petitioner's Prior Conviction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
            b. Failure to Request Limiting Instruction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
            c. Failure to Object at Sentencing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
    F.   *Sentencing (Claim III)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
    G.   *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
III.  NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

\*     \*     \*     \*     \*


I.     RECOMMENDATION: The Court should deny petitioner's application for the writ of

habeas corpus.

II.    REPORT:

A.    *Procedural History*

1.    Petitioner Jacob James Nance is a state prisoner, currently confined at the Straits Correctional Facility in Kincheloe, Michigan.

2.    On July 12, 2004, petitioner was convicted of involuntary manslaughter, MICH. COMP. LAWS § 750.321, following a jury trial in the Oakland County Circuit Court.  On July 30, 2004, he was sentenced to a term of 12½-30 years' imprisonment.

3.    Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

I.    DEFENDANT-APPELLANT WAS DEPRIVED A FAIR AND IMPARTIAL TRIAL DUE TO PROSECUTORIAL MISCONDUCT

II.   DEFENDANT-APPELLANT'S CONVICTION MUST BE SET ASIDE WHERE HIS ATTORNEY RENDERED CONSTITUTIONALLY INEFFECTIVE ASSISTANCE WHERE HIS ATTORNEY BROUGHT OUT A PRIOR CONVICTION, THEN OPENED THE DOOR TO QUESTIONS ABOUT THE FACTUAL ALLEGATIONS UNDERLYING THE FORMER OFFENSE AND WHERE HE FAILED TO REQUEST A LIMITING INSTRUCTION AFTER A DEFENSE WITNESS WAS IMPEACHED.

III.  THERE WAS NO LEGAL SUPPORT FOR SCORING 10 POINTS FOR INJURIES PRECEDING A DEATH UNDER OV 3 IN A HOMICIDE CASE AND TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT TO ITS SCORING.

The court of appeals found no merit to petitioner's claims, and affirmed his conviction and sentence. *See People v. Nance*, No. 257266, 2005 WL 3500880 (Mich. Ct. App. Dec. 22, 2005) (per curiam).

4.    Petitioner, proceeding *pro se*, sought leave to appeal these issues to the Michigan Supreme Court.  The Supreme Court denied petitioner's application for leave to appeal in a standard order.  *See People v. Nance*, 475 Mich. 870, 714 N.W.2d 319 (2006).

5.    Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus

on October 16, 2006.  As grounds for the writ of habeas corpus, he raises the three claims that he raised in the state courts.

6.     Respondent filed his answer on April 18, 2007.  He contends that petitioner's first and third claims are barred by petitioner's procedural default in the state courts, and that petitioner's second claim is without merit.

7.     Petitioner filed a reply to respondent's answer on May 17, 2007.

B.     *Factual Background Underlying Petitioner's Conviction*

The facts underlying petitioner's conviction were accurately summarized by the Michigan Court of Appeals:

> Defendant's conviction arises from the beating death of Steve Pomorski. On January 4, 2004, at approximately 2:30 a.m., several people left the Overtyme bar in Waterford and proceeded to the nearby home of Scott Moore to continue drinking and socializing. Amy Motherman attended the party with two of her uncles and Angie Davison. Motherman testified that there was a crowd at Moore's house. Guests were consuming alcohol, and some were openly using cocaine. Motherman met the victim outside of Moore's house and talked to him for a period of time before giving him her telephone number.
>
> During the party, the victim engaged in a verbal altercation with defendant. Steven Ball, one of Motherman's uncles, subsequently overheard defendant indicating that he wanted to "kick" the victim's "ass." At trial, defendant admitted that he argued with the victim at the party. Their argument began when defendant changed the music on a CD player. There was tension at the party after that time, and some of the guests left.
>
> Motherman and Davison left the party at one point and went to a nearby restaurant. When they returned, the party was nearing its end. The victim was still present, but defendant had left. Davison, who was very intoxicated, wanted to see defendant. She telephoned him and asked him to return to Moore's house. Defendant, accompanied by Ross Oliver, did so. Motherman was upset by this. She wanted to go home and take Davison with her. Motherman and Oliver argued about her desire to leave with Davison, and defendant joined the argument. He called Motherman derogatory terms, prompting her to leave Moore's house alone and return to the car.
>
> The victim approached Motherman outside and wanted to get into the car with her. She refused to allow him to do so. She then began backing out of Moore's driveway. At that point, Davison ran out of the house and came to the car. Defendant and Oliver exited the house after Davison. As they walked away from the house, they

came upon the victim standing outside. From the car, Motherman observed the victim's mouth moving while he stood near defendant. Motherman then saw defendant strike the victim in the left eye. The blow appeared very hard. The victim fell over, hitting the back of his head on the pavement. Motherman testified that, before defendant struck the victim, the victim did not move any part of his body. He did not swing his arms at defendant or act as if he planned to hit him. After defendant struck the victim, he and Oliver drove quickly away.

The victim died four days later at Pontiac Osteopathic Hospital. Defendant's punch caused fractures to the bones forming the victim's left eye socket. While those injuries were not fatal, the victim's fall to the ground caused a linear fracture to his skull, which in turn caused dramatic brain swelling. The impact actually shoved the victim's brain stem through the opening at the bottom of his skull. The victim was found to have an extraordinarily high blood alcohol content after his injury, and cocaine was detected in his urine. Neither condition, however, contributed to the manner, mechanism, or cause of his death.

Defendant claimed self-defense, arguing that the victim swung at him first, that he did not intend to kill the victim, and that he just wanted to prevent the victim from harming him first. The jury convicted defendant as charged.

*Nance*, 2005 WL 3500880, at *1-*2, slip op. at 1-2.

C.  *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by

the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No.

104-132, 110 Stat. 1214 (Apr. 24, 1996).  *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).

Amongst other amendments, the AEDPA amended the substantive standards for granting habeas

relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its

decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.    *Prosecutorial Misconduct (Claim I)*

Petitioner first contends that he was denied a fair trial by the prosecutor's misconduct at trial. Specifically, petitioner contends that the prosecutor committed misconduct by: (1) questioning defense witness Jason Blevins regarding prior inconsistent statements and by using those statements as substantive evidence of guilt; and (2) arguing facts not in evidence. The Court should conclude that petitioner is not entitled to habeas relief on this claim.[1]

---

[1]Respondent contends that petitioner's prosecutorial misconduct claim, as well as his sentencing claim, is barred by petitioner's procedural default in failing to object at trial. Although respondent's procedural default argument appears meritorious on its face because, as discussed below, these claims are clearly without merit, the Court may deny the petition on this basis without first addressing procedural default. *See Trest v. Cain*, 522 U.S. 87, 89 (1997) (procedural default is not jurisdictional); *Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir. 1999) (internal citations omitted) ("[J]udicial economy sometimes dictates reaching the merits of [a claim or

1.     *Clearly Established Law*

For habeas relief to be warranted on the basis of prosecutorial misconduct, it is not enough that the prosecutor's conduct was "undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). Rather, the misconduct must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* (internal quotation omitted). "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). In determining whether the prosecutor's conduct was so egregious as to warrant habeas relief, a court should consider "the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they are isolated or extensive; whether they were deliberately or accidentally placed before the jury; and the strength of the competent proof to establish the guilt of the accused." *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (internal quotations and citations omitted). In sum, to constitute a denial of due process the prosecutor's conduct must be "so pronounced and persistent that it permeates the entire atmosphere of the trial." *Id.* (internal quotation omitted).

Similarly, unless a violation of a state's evidentiary rule results in the denial of fundamental fairness, an issue concerning the admissibility of evidence does not rise to the level of a constitutional magnitude. *See Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988); *Davis v. Jabe*, 824 F.2d 483, 487 (6th Cir. 1987). "[A] federal habeas court has nothing whatsoever to do with reviewing a state court ruling on the admissibility of evidence under state law. State evidentiary law

---

claims] if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated."). *See generally*, *Lambrix v. Singletary*, 520 U.S. 518, 524-25 (1997) (noting that procedural default issue should ordinarily be resolved first, but denying habeas relief on a different basis because resolution of the default issue would require remand and further judicial proceedings).

simply has no effect on [a court's] review of the constitutionality of a trial, unless it is asserted that the state law itself violates the Constitution." *Pemberton v. Collins*, 991 F.2d 1218, 1223 (5th Cir. 1993). As the Sixth Circuit has noted, "[e]rrors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994); *see also, Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (federal habeas courts have no authority to interfere with perceived errors in state law unless the petitioner is denied fundamental fairness in the trial process). In short, "[o]nly when the evidentiary ruling impinges on a specific constitutional protection or is so prejudicial that it amounts to a denial of due process may a federal court grant a habeas corpus remedy." *Barrett v. Acevedo*, 169 F.3d 1155, 1163 (8th Cir. 1999); *see also*, *Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001). Where a specific constitutional right–such as the right to confront witnesses or to present a defense–is not implicated, federal habeas relief is available only if the allegedly erroneously admitted evidence "is almost totally unreliable and . . . the factfinder and the adversary system will not be competent to uncover, recognize, and take due account of its shortcomings." *Barefoot v. Estelle*, 463 U.S. 880, 899 (1983).

2.   *Analysis*

a.  *Prior Inconsistent Statements*

At trial, petitioner presented the testimony of Jason Blevins, a friend who was at the party where the altercation occurred. On direct examination, Blevins testified generally that petitioner had gotten along with everyone at the party, that he had witnessed petitioner's altercation with the victim in the kitchen and that, after that altercation, petitioner's demeanor did not change. *See* Trial Tr., dated 7/12/04, at 7-11. On cross-examination, Blevins denied telling the prosecutor prior to trial that

petitioner was angry with the victim after the initial confrontation in the kitchen. The following

exchange occurred:

> Q:    As a matter of fact when you were playing cards with Joe Franklin at the card table Jake actually came up to the two of you at the table, didn't he?
>
> A:    Yes, after the altercation.
>
> Q:    Yeah, and he started talking about the fact that, he said some guy was talking shit to him, isn't that what you told us before?
>
> A:    Yes, I did.
>
> Q:    And he said that he wanted to know what to do about it, right?
>
> A:    No, I did not.
>
> Q:    And Joe said to him, let it go, right?
>
> A:    Yes, Joe said let it go.
>
> Q:    And I asked you at that time [during a June 18 interview at the police station], wasn't he angry and you said yes, he was. He was angry, wasn't he.
>
> A:    I didn't say yes, he was?
>
> Q:    You said he was angry, didn't you?
>
> A:    No, I did not.
>
> Q:    And he was angry when he came up to you and Joe Franklin at the table telling you that this guy is talking shit to him, right?
>
> A:    He come up and said the guy was talking shit to us, yes, he did.
>
> Q:    And he was angry?
>
> A:    I never told you that.
>
> Q:    You didn't say that on June 18, at the Waterford Township Police, to us?
>
> A:    Not that I recall.
>
> Q:    You don't recall that?
>
> A:    No, I do not. I said that he come up and said that him and the guy was having altercations.
>
> Q:    And you're telling this jury right now that he was not angry at that point?
>
> A:    No, he said they were having altercations.
>
> Q:    And you do not recall coming to the Waterford Police Department on June 18, and talked to myself and Detective Palombo and telling us that at that point when he come up to you at the table he was angry?
>
> A:    I remember seeing you guys, but I don't remember saying that he was angry. I said that he come up to us and said that he was having an altercation.
>
> Q:    And you said that you and Joe [Franklin] said to let it go, right?
>
> A:    Yes.
>
> Q:    To let it go?
>
> A:    Yes.
>
> Q:    Because he was hanging on to it, wasn't it [sic]?
>
> A:    Probably just to let it go, leave it alone.
>
> Q:    Listen to my question. You said to let it go because he was hanging on to it,

right?
A:     As far as hanging on to what, what do you mean?
Q:     That he, his altercation with Steve Pomorski?
A:     When he came up and said he was having an altercation we said, just let it go. We're at a party we're having a good time.
Q:     Because he was hanging on to the fact that he had an altercation, right, it was bugging him?
A:     Oh, if you want to say that, yes, I guess.
Q:     He was angry, right?
A:     Not like you're trying to make it out to be, no.
Q:     I'm just using the word angry, that's all I'm saying. He was angry, right?
A:     Okay, then, he was angry, not like that, though.
Q:     Not like what?
A:     Just all he said was they were having an altercation. It wasn't like he come up and he was, screaming at us or nothing about it.
Q:     But he didn't like the fact that this guy was bugging him, did he?
A:     Of course not, no.
Q:     That's why he came up to you and Joe, wasn't it?
A:     You could say that, yes.
Q:     And the fact was that you were kind of concerned that something was going to happen, weren't you?
A:     Well, not really.
Q:     Didn't you all get up and leave the party right after that?
A:     No, we stayed for a little bit longer and then we left.
Q:     How much longer did you stay?
A:     Half hour, hour, forty five minutes.
Q:     And didn't you tell us that you thought something might happen after that when you came to the Waterford Police Department and talked to us on June 18?
A:     Do I know.
Q:     You didn't tell Detective Palombo and myself that you were concerned that something was going to happen, that it seemed like there was some tension or something was going to happen?
A:     Oh, yes, there was some tension, yes, I did.

*Id*. at 14-17. During closing argument, the prosecutor referred to Blevins's testimony:

> He even comes up to Blevins. Blevins is at the table, you know this he told him to let it go, he's not letting it go. This is bothering him, it's bugging him. He's angry and it took several minutes to get Blevins to finally say okay, yeah, okay, he said he was angry. But now you're trying to portray, well I wasn't trying to portray. I wasn't trying to get him to repeat what he had truthfully said to myself and the police officer at the police station and finally he did, okay, he was angry.

*Id.* at 112-13. Later, during rebuttal argument, the prosecutor argued: "Remember when he goes up to Blevins and Joe Franklin at the table and says you this guy is really pissing me off," and "We know that Blevins did this, Heath said this, Steve Ball said this, there was tension." *Id.* at 137.

Petitioner cannot show any error either in the prosecutor's questions or the prosecutor's argument to the jury. With respect to the prosecutor's question of Blevins, it is "[a] basic rule of evidence [that] prior inconsistent statements may be used to impeach the credibility of a witness." *United States v. Hale*, 422 U.S. 171, 176 (1975). There was nothing improper, therefore, in the prosecutor's attempt to impeach Blevins with the prior statement he had given to the prosecutor and police. *See Babick v. Berghuis*, No. 1:03-cv-20, 2008 WL 282166, at *66-*67 (W.D. Mich. Jan. 29, 2008); *Anderson v. Curley*, No. 05-CV-74596-DT, 2007 WL 2259333, at *10 (E.D. Mich. Aug. 2, 2007) (Tarnow, J.). Indeed, petitioner was not impeached at all. Although the prosecutor laid a foundation for impeachment by eliciting from Blevins a denial that he made the prior statement, the prosecutor did not bring in any extrinsic evidence to contradict that denial and impeach Blevins's trial testimony. *See* MICH. R. EVID. 613.

With respect to the prosecutor's closing argument, petitioner cannot show that he was deprived of a fair trial. First, even assuming that petitioner's characterization of the prosecutor's argument that the prosecutor used Blevins's prior inconsistent statement as substantive evidence of guilt is correct, the rule prohibiting the use of a prior inconsistent statement as substantive evidence of guilt is not a rule of constitutional dimension. *See Isaac v. United States*, 431 F.2d 11, 15 (9th Cir. 1970). Second, the transcript does not establish that the prosecutor, in fact, used Blevins's prior inconsistent statement as substantive evidence. Although the prosecutor initially questioned Blevins regarding his prior statement that petitioner was angry, along the way the prosecutor's questions

evolved into direct questions as to whether petitioner was, in fact, angry. And Blevins ultimately admitted not that he had previously told the police that petitioner was angry, but that petitioner was in fact angry, although not in the manner the prosecutor was trying to suggest. *See* Trial Tr., dated 7/12/04, at 16. The transcript confirms what the Michigan Court of Appeals found, namely, that "[w]hen Blevins denied the statement, the prosecutor asked direct questions about [petitioner's] demeanor or mood before the assault on the victim." *Nance*, 2005 WL 3500880, at *3, slip op. at 4. And because this was substantive testimony by Blevins, the prosecutor was free to argue that the evidence was substantive evidence of guilt. Further, not only Blevins, but also Chris Heath and Steven Ball testified that there was tension at the party. *See* Trial Tr., dated 7/8/04, at 91, 93-94; *id.*, dated 7/12/04, at 51. In these circumstances, petitioner cannot show that the prosecutor committed misconduct by referring to Blevins's testimony concerning petitioner's anger and the tension at the part and arguing that this testimony constituted substantive evidence of petitioner's guilt. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### b. Facts Not in Evidence

Petitioner also contends that the prosecutor committed misconduct by arguing facts not in evidence. Specifically, during closing argument the prosecutor told the jury: "And Chris Heath told us that he saw Jake talking with Scott and he said that he asked Jake what were you guys talking about, he said well, I was telling him to tell his buddy to back off. Back off or I'm going to kick his ass." Trial Tr., dated 7/12/04, at 112. During his testimony, Heath testified that although he witnessed the conversation, he did not hear what was said. *See id.* at 49. Although the prosecutor's comment was a misstatement of Heath's testimony, in context the misstatement did not deprive petitioner of a fair trial. The prosecutor's characterization of Heath's testimony immediately

followed his accurate summary of Steven Ball's testimony:

> Remember Steve Ball. And he said that their – he heard some words between Steve and Jake down on the first floor. He said that, that altercation that he heard come from like in this area someplace. And then he said he moved into here and he come into this room and he said he saw Jake talking to Scott, remember – and he said he heard Jake say I'm going to kick this guy's ass. This guy's bothering me, I'm going to kick his ass.

*Id*. at 112; *see also*, *id*., dated 7/8/04, at 92-93, 101 (Ball's testimony). Viewing the two paragraphs together, it is not clear whether the prosecutor was (a) suggesting that Heath himself had testified that he heard petitioner state he wanted to "kick [the victim's] ass," or (b) merely arguing that Ball's and Heath's testimony taken together established that petitioner had talked to Scott (to which both Ball and Heath testified) and had stated that he wanted to kick the victim's ass (to which Ball alone testified). The second reading–the one adopted by the Michigan Court of Appeals, *see Nance*, 2005 WL 3500880, at *5, slip op. at 6–is certainly a reasonable one under § 2254(d). In any event, in light of Ball's testimony, petitioner cannot show that he was denied a fair trial by the prosecutor's mischaracterization (if such it was) of Heath's testimony. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

E.      *Ineffective Assistance of Counsel (Claims II & III)*

Petitioner next contends that his attorney rendered constitutionally deficient performance. Specifically, petitioner contends that counsel was ineffective for: (1) opening the door to questioning concerning petitioner's prior conviction; (2) failing to request a limiting instruction on use of prior inconsistent statements; and (3) failing to object to the scoring of Offense Variable 3 at sentencing. The Court should conclude that petitioner is not entitled to habeas relief on these ineffective assistance of counsel claims.

1.      *Clearly Established Law*

The Sixth Amendment right to counsel and the corollary right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id.* at 687. These two components are mixed questions of law and fact. *See id.* at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.*

With respect to the performance prong of the inquiry, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id.* at 689; *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.

2. *Analysis*

a. *Petitioner's Prior Conviction*

14

Petitioner first contends that counsel was ineffective for introducing evidence of his prior conviction and opening the door to questioning regarding the details of that conviction. Prior to trial, the prosecutor and defense counsel stipulated to admit petitioner's prior conviction for making a false statement on a driver's license application. On direct examination of petitioner, counsel brought this fact out, specifically asking petitioner: "In other words, you lied under oath for your application?" Trial Tr., dated 7/12/04, at 54. On cross-examination, the prosecutor questioned petitioner regarding the details of the conviction, eliciting from petitioner that he had lied in order to obtain a driver's licence so that he could maintain his employment with a moving company. *See id*. at 90-93. However, even assuming that counsel erred by opening the door to this questioning or by failing to object to the questioning, petitioner cannot show a reasonable probability that, but for counsel's error, the result of the trial would have been different.

It is beyond doubt that petitioner's prior conviction, containing an element of false statement, was admissible to impeach his testimony. *See* MICH. R. EVID. 609(a)(1). This being the case, petitioner cannot show any additional prejudice arising from the details of the conviction, as opposed to the fact of the conviction itself. The details of the prior conviction were wholly unrelated to the charged crime, and did not in any way show that petitioner had problems with his anger or was a violent person. On the contrary, petitioner's explanation for the prior conviction–his desire to remain employed–tended, if anything, to cast him in a better light than simple knowledge of the fact of conviction would have. Further, the jury was instructed that this evidence could not be used as substantive evidence, but only to evaluate petitioner's credibility. *See* Trial Tr., dated 7/12/04, at 142. The Court must presume that the jury followed this instruction. *See Richardson v. Marsh*, 481 U.S. 200, 206 (1987); *see also*, *Shannon v. United States*, 512 U.S. 573, 585 (1994); *United*

*States v. Olano*, 507 U.S. 725, 740 (1993); *Francis v. Franklin*, 471 U.S. 307, 324 n.9 (1985). In these circumstances, petitioner cannot show a reasonable probability that the result of the proceeding would have been different had the prosecutor not inquired into the details of his prior conviction.

### b. Failure to Request Limiting Instruction

Petitioner also contends that counsel was ineffective for failing to request a limiting instruction regarding the use of Blevins's prior inconsistent statement. The Michigan Court of Appeals rejected this claim, concluding that although counsel may have been deficient in failing to request the instruction, petitioner did not establish prejudice. Specifically, the court reasoned that "[r]egardless of Blevins' impeachment with respect to defendant's demeanor at the party, there was ample evidence that defendant argued with the victim, that defendant thereafter made the statement that he wanted to harm the victim, and that there was tension after the argument." *Nance*, 2005 WL 3500880, at *6, slip op. at 8. This determination was reasonable.

As noted above in connection with petitioner's prosecutorial misconduct claim, it is questionable whether the prosecutor even impeached Blevins with his prior inconsistent statement. Although he attempted to lay a foundation for such impeachment, the prosecutor did not introduce any evidence to rebut Blevins's denial of his prior statement. And, more importantly, Blevins testified as a substantive matter that petitioner was angry, although not in the way the prosecutor was attempting to portray. Further, as the court of appeals noted, there was ample evidence besides Blevins's testimony that petitioner and the victim had been in an altercation, that petitioner was upset and stated that he wanted to "kick [the victim's] ass," and that a number of people at the party could feel the tension and thought that "something" was going to happen. In light of this evidence and the limited nature of the impeachment of Blevins, there is not a reasonable probability that the

result of the proceeding would have been different if a specific instruction on prior inconsistent statements was given to the jury. *Cf. United States v. Thomas*, No. 91-80190, 1994 WL 43393, at *7 (6th Cir. Feb. 11, 1994); *United States v. Benton*, 637 F.2d 1052, 1059 (5th Cir. Unit B 1981). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### c. Failure to Object at Sentencing

Finally, petitioner contends that counsel was ineffective for failing to object at sentencing to the scoring of Offense Variable 3 (OV3). As explained more fully in the following section, however, the Michigan Court of Appeals determined that there was no error in the scoring of OV3 as a matter of state law. *See Nance*, 2005 WL 3500880, at *7, slip op. at 8. In analyzing petitioner's ineffective assistance of counsel claim, this expression of state law is binding on this Court. *See Basile v. Bowersox*, 125 F. Supp. 2d 930, 960 (E.D. Mo. 1999). *See generally*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Sarausad v. Porter*, 503 F.3d 822, 824 (9th Cir. 2007) ("A determination of state law by a state appellate court is . . . binding in a federal habeas action."). Thus, any objection by counsel would have been futile. Counsel cannot be deemed ineffective for failing to raise a meritless objection. *See Bradley v. Birkett*, 192 Fed. Appx. 468, 475 (6th Cir. 2006); *Anderson v. Goeke*, 44 F.3d 675, 680 (8th Cir. 1995); *Burnett v. Collins*, 982 F.2d 922, 929 (5th Cir. 1993). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.[2]

---

[2]Petitioner requests an evidentiary hearing on his ineffective assistance of counsel claims at which he could explore the bases of counsel's strategic decisions. Even assuming that an evidentiary hearing were permitted under 28 U.S.C. § 2254(e)(2) (providing that, "[i]f the applicant has failed to develop the factual basis of the a claim in State court proceedings, the court shall not hold an evidentiary hearing on a claim unless" one of two exceptions is met), such a hearing is not necessary. In making the determination of whether an evidentiary hearing is necessary under Rule 8 of the Rules Governing Section 2254 Proceedings in United States District

F.      *Sentencing (Claim III)*

Finally, petitioner challenges his sentencing.  Specifically, he challenges the trial court's

scoring of OV3.  The Court should conclude that petitioner is not entitled to habeas relief on this

claim.

Petitioner contends that the trial court erred in scoring OV3, which governs injury to the

victim.  Under OV3, a court is to score either 50 or 100 points if death results from the crime, 25

points if a life threatening or permanent incapacitating injury occurred to the victim, 10 points if

injury requiring medical treatment occurred, 5 points if injury not requiring medical treatment

occurred, and 0 points if no injury occurred.  *See* MICH. COMP. LAWS § 777.33(1).  The statute also

instructions that 100 points should be assessed only if death occurred and the offense of conviction

was *not* a homicide offense.  *See id.* § 777.33(2)(b).  Petitioner contends that the trial court erred in

scoring 10 points on OV3 because his offense of conviction was a homicide offense.  Petitioner is

not entitled to habeas relief on this claim, for two reasons.

First, a habeas petitioner's claim that the trial court violated state law when sentencing him

is not cognizable in habeas corpus proceedings. *See Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir.

1988); *Haynes v. Butler*, 825 F.2d 921, 924 (5th Cir. 1987). Federal habeas courts have no authority

to interfere with perceived errors in state law unless the petitioner is denied fundamental fairness

---

Courts, 28 U.S.C. foll. § 2254, "courts focus on whether a new evidentiary hearing would be
meaningful, in that a new hearing would have the potential to advance the petitioner's claim."
*Campbell v. Vaughn*, 209 F.3d 280, 287 (3d Cir. 2000) (discussing *Cardwell v. Greene*, 152 F.3d
331, 338 (4th Cir. 1998)); *see also*, *Schriro v. Landrigan*, 127 S. Ct. 1933, 1940 (2007).  Here, an
evidentiary hearing would not have the potential to advance petitioner's claims.  As noted above,
petitioner cannot establish prejudice with respect to any of his claims even if, as he alleges,
counsel's performance was deficient.  Because the prejudice prong of the *Strickland* test can be
resolved on the basis of the state court record, an evidentiary hearing is not necessary under Rule
8.  Accordingly, the Court should deny petitioner's request for an evidentiary hearing.

in the trial process. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Department of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). Petitioner's claim that the court improperly scored the guidelines range raises an issue of state law that is not cognizable on habeas review. *See Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999) (Gadola, J.) (claim that sentencing court departed from Michigan sentencing guidelines presents an issue of state law only and is, thus, not cognizable in federal habeas review); *Welch v. Burke*, 49 F. Supp. 2d 992, 1009 (E.D. Mich. 1999) (Cleland, J.) (same); *see also, Branan*, 851 F.2d at 1508 (claim that court misapplied state sentencing guidelines not cognizable on habeas review).

Second, even assuming that the claim were cognizable, petitioner cannot show that the trial court erred in scoring OV3. There is no question that, at a minimum, the victim received an injury requiring medical treatment. In *People v. Houston*, 473 Mich. 399, 702 N.W.2d 530 (2005), the Michigan Supreme Court rejected the argument that, because the statute prohibits the imposition of 100 points where the offense of conviction is a homicide, it requires a score of zero points. The court explained that although the statute prohibited the imposition of 100 points, it also prohibited the imposition of zero points because that it permitted only where no injury occurred. *See id*. at 405-06, 702 N.W.2d at 533. Because, in that case, "gunshot wound to the victim's head . . . unquestionably constitutes a physical injury[,] . . . the trial court did not have the option of scoring zero points for OV 3." *Id*. at 406, 702 N.W.2d at 533. Thus, "[t]he only options left for the trial court, therefore, were to assess either twenty-five points under M.C.L. § 777.33(1)(c) or ten points under M.C.L. § 777.33(1)(d) on the basis of the life-threatening bodily injury requiring medical treatment sustained by the victim." *Id*. at 407, 702 N.W.2d at 533-34. Similarly, in petitioner's case 100 points was not an option because the underlying offense was for a homicide, and zero points

was not an option because the victim obviously suffered a physical injury. Thus, the only option available to the trial court was either 25 or 10 points, and the trial court did not err in assigning 10 points.[3]

Petitioner raises two additional arguments in support of his sentencing claim. First, he relies on cases, such as *Townsend v. Burke*, 334 U.S. 736 (1948), establishing the proposition that the Due Process Clause prohibits a sentence which is based on inaccurate factual information. The problem with this argument, however, is that petitioner does not allege that there was any materially inaccurate factual information. He does not claim that the victim did not, in fact, receive an injury requiring medical treatment. Rather, petitioner complains of a *legal* error in the state courts' interpretation of § 777.33. This is an issue of state law, and does not implicate the rule governing sentences based on inaccurate *factual* information.

Petitioner also claims that his sentence violated the Supreme Court's *Apprendi* line of cases. In *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id*. at 490. In *Blakely*, the Court considered the applicability of *Apprendi* to a state sentencing guidelines scheme similar to the United States Sentencing Guidelines. The state in that case argued that guidelines findings were not

_____

[3]Indeed, there probably was an error which inured to petitioner's benefit. The statute directs the trial court to assign the highest possible points for OV3. *See* MICH. COMP. LAWS § 777.33(1). Here, the victim's injury undoubtedly constituted a serious life threatening or permanently incapacitating injury, making a score of 25 points appropriate. "Because the statute directs the trial court to award the highest number of points possible under OV 3, the trial court was required to assess twenty-five points under M.C.L. § 777.33(1)(c)." *Houston*, 473 Mich. at 407, 702 N.W.2d at 534. Thus, petitioner actually received a benefit by the trial court's scoring of OV3 at 10 points, rather than at 25 points.

prohibited by *Apprendi* because *Apprendi* prohibited only factual findings at sentencing which increased the statutory maximum penalty to which the defendant was exposed. The Court in *Blakely* rejected this argument and struck down the state guidelines scheme, explaining that:

> the "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.* In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts "which the law makes essential to the punishment," and the judge exceeds his proper authority.

*Blakely*, 542 U.S. at 303-04 (citations omitted) (emphasis in original).

Finally, in *United States v. Booker*, 543 U.S. 220 (2005), the Court took the step logically suggested by *Blakely*, concluding that the United States Sentencing Guidelines are unconstitutional under *Apprendi* because they allow federal judges to impose sentences based on facts not found by a jury beyond a reasonable doubt. Two separate majorities formed the Court's decision. Justice Stevens delivered the opinion of the Court on the substantive question of whether the Guidelines are unconstitutional under *Apprendi*. Noting that there was no difference of constitutional significance between the Guidelines and the state guideline system at issue in *Blakely*, *see Booker*, 543 U.S. at 233, and rejecting the government's attempts to distinguish the two, *see id*. at 237-43, the merits majority concluded that the Guidelines violate the Sixth Amendment as interpreted in *Apprendi*. A separate majority joined an opinion authored by Justice Breyer, which contained the Court's decision on the remedial issue. The remedial majority concluded that the appropriate remedy for the constitutional violation was not to strike the Guidelines in their entirety, but to excise two statutory provisions which make the Guidelines mandatory. *See id*. at 245. Thus, under *Booker* the Guidelines remain advisory, and a federal district judge must consult the Guidelines before imposing

sentence, but the judge is not bound to follow the Guidelines.

Michigan law provides for an indeterminate sentencing scheme, unlike the determinate sentencing schemes at issue in *Blakely* and *Booker*. Under Michigan law the defendant is given a sentence with a minimum and a maximum sentence. The maximum sentence is not determined by the trial judge but is set by law. *See People v. Drohan,* 475 Mich. 140, 160-61, 715 N.W.2d 778, 789-90 (2006); *People v. Claypool,* 470 Mich. 715, 730 n.14, 684 N.W.2d 278, 286 n.14 (2004); MICH. COMP. LAWS § 769.8. "[M]ichigan's sentencing guidelines, unlike the Washington guidelines at issue in *Blakely*, create a range within which the trial court must set the minimum sentence." *Drohan,* 475 Mich. at 161, 715 N.W.2d at 790. Under Michigan law, only the minimum sentence must presumptively be set within the appropriate sentencing guidelines range. *See People v. Babcock,* 469 Mich. 247, 255 n.7, 666 N.W.2d 231, 236 n.7 (2003) (discussing MICH. COMP. LAWS § 769.34(2)). Under Michigan law, the trial judge sets the minimum sentence, but can never exceed the maximum sentence. *See Claypool,* 470 Mich. at 730 n.14, 684 N.W.2d at 286 n.14.

*Blakely* is inapplicable here because *Blakely* is concerned only with the *maximum* penalty which is authorized by a jury's findings or a defendant's plea: if some additional factor increases the defendant's penalty beyond that which could be imposed solely on the basis of the jury's findings or the defendant's plea, *Blakely* requires that those facts be found by a jury beyond a reasonable doubt (or be themselves pleaded to by a defendant). As explained above, unlike the guidelines scheme at issue in *Blakely*, the Michigan sentence guidelines help determine only the minimum portion of a defendant's indeterminate sentence. The maximum is, in every case, the statutory maximum authorized by law. *See Claypool*, 470 Mich. at 730 n.14, 684 N.W.2d at 286 n.14; MICH. COMP. LAWS § 769.8. Petitioner's conviction, therefore, contained all of the factual

findings necessary to impose the statutory maximum on that charge. *See Drohan*, 475 Mich. at 162, 715 N.W.2d at 790 ("Thus, the trial court's power to impose a sentence is always derived from the jury's verdict, because the 'maximum-minimum' sentence will always fall within the range authorized by the jury's verdict.").

This being the case, petitioner's sentence did not violate *Blakely* even though the trial court made additional factual findings in imposing the minimum term of petitioner's imprisonment. The Supreme Court has repeatedly made clear that the *Apprendi* rule is concerned only with the maximum sentence which is authorized by a jury's verdict or a defendant's plea. As the Supreme Court explained in *Harris v. United States*, 536 U.S. 545 (2002):

> *Apprendi* said that any fact extending the defendant's sentence beyond the maximum authorized by the jury's verdict would have been considered an element of an aggravated crime–and thus the domain of the jury–by those who framed the Bill of Rights. The same cannot be said of a fact increasing the mandatory minimum (but not extending the sentence beyond the statutory maximum), for the jury's verdict authorized the judge to impose the minimum with or without the finding.

*Harris*, 536 U.S. at 557. This distinction is important because the only issue under the Sixth Amendment is whether the judge is impinging on the role of the jury. For this reason, the Court explicitly excepted indeterminate sentencing schemes such as Michigan's from its holding in *Blakely*. Rejecting an argument raised by Justice O'Connor in dissent, the Court explained:

> Justice O'Connor argues that, because determinate sentencing schemes involving judicial factfinding entail less judicial discretion than indeterminate schemes, the constitutionality of the latter implies the constitutionality of the former. This argument is flawed on a number of levels. First, the Sixth Amendment by its terms is not a limitation on judicial power, but a reservation of jury power. It limits judicial power only to the extent that the claimed judicial power infringes on the province of the jury. Indeterminate sentencing does not do so. It increases judicial discretion, to be sure, but not at the expense of the jury's traditional function of finding the facts essential to lawful imposition of the penalty. Of course indeterminate schemes involve judicial factfinding, in that a judge (like a parole board) may implicitly rule on those facts he deems important to the exercise of his

sentencing discretion. But the facts do not pertain to whether the defendant has a legal *right* to a lesser sentence–and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned.

*Blakely*, 542 U.S. at 309 (citation omitted).

Under this reasoning, it is clear that Michigan's indeterminate sentencing guideline scheme, under which the maximum is established by statute and only the minimum term is based on judicial factfinding, does not violate the Sixth Amendment. *See Bellamy v. Curtin*, No. 1:06-CV-599, 2007 WL 527988, at *4 (W.D. Mich. Feb. 14, 2007); *Mays v. Trombley*, No. 2:06-CV-14043, 2006 WL 3104656, at *3 (E.D. Mich. Oct. 31, 2006) (Hood, J.); *Worley v. Palmer*, No. 2:06-CV-13467, 2006 WL 2347615, at *2 (E.D. Mich. Aug. 11, 2006) (Cohn, J.); *Toothman v. Davis*, No. 05-CV-74561, 2006 WL 2190515, at *2 (E.D. Mich. Aug. 1, 2006) (Edmunds, J.); *Drohan,* 475 Mich. at 164, 715 N.W.2d at 791-92; *Claypool*, 470 Mich. at 730 n.14, 684 N.W.2d at 286 n.14; *cf. Williams v. Benik*, No. 04-C-966, 2005 WL 300379, at *2 (Jan. 26, 2005), *vacated in part on other grounds*, 2005 WL 331743 (W.D. Wis. Feb. 8, 2005) (upholding state's indeterminate sentencing scheme under *Blakely*); *State v. Rivera*, 102 P.3d 1044, 1054-55 (Hawai'i 2004) (same); *Commonwealth v. Junta*, 815 N.E.2d 254, 262 n.11 (Mass. Ct. App. 2004) (same); *Commonwealth v. Smith*, 863 A.2d 1172, 1178 (Pa. Super. Ct. 2004) (same). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

G. *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.

III.    <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


                                        s/Paul J. Komives_____
                                        PAUL J. KOMIVES
                                        UNITED STATES MAGISTRATE JUDGE
Dated: <u>7/15/08</u>


> The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on July 15, 2008.
>
>                     s/Eddrey Butts_____
>                     Case Manager